IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY L. MUTSCHLER, | No. 3:14-CV-02477 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BRENDA L. TRITT, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MAY 24, 2023

*Pro se* Plaintiff Tony L. Mutschler ("Mutschler"), who is presently incarcerated in the State Correctional Institution-Laurel Highlands ("SCI-Highlands"), complains of alleged civil rights violations when he was previously incarcerated in the State Correctional Institution-Frackville ("SCI-Frackville"). Following a limited remand from the United States Court of Appeals for the Third Circuit, I conducted a bench trial on Mutschler's remaining claim, which alleges that Defendants Brenda L. Tritt and Roy Manbeck were deliberately indifferent to Mutschler's health and safety by failing to remove soiled adult diapers and soiled linens from Mutchler's cell. Upon consideration of the evidence adduced at trial, I find that Mutschler has not established that Defendants were deliberately indifferent to his health or safety. I will accordingly grant judgment in Defendants' favor.

I.  **BACKGROUND**

Mutschler filed this case pursuant to 42 U.S.C. § 1983 on December 30, 2014, alleging violations of his civil rights by various defendants connected to SCI-Frackville, including Dr. Adrian Harewood and six Pennsylvania Department of Corrections ("DOC") officials.[1] Mutschler, who suffers from incontinence, alleges that Defendants did not prescribe him enough adult diapers, that as a result of not having enough diapers, he was forced to sleep in urine-soaked diapers and bedding for hours at a time, and that the defendants allowed his discarded and soiled diapers to accumulate in his cell.[2] Mutschler voluntarily dismissed his claims against Defendant John E. Wetzel on February 26, 2015.[3]

Following the resolution of two motions to dismiss and a period of fact discovery, I issued an Order on April 3, 2018 that set a discovery deadline of June 4, 2018 and a dispositive motions deadline of July 2, 2018.[4] Defendant Harewood timely moved for summary judgment on June 4, 2018.[5] The Commonwealth Defendants did not initially move for summary judgment, but on May 21, 2019 they filed a motion for leave to file a motion for summary judgment *nunc pro*

---

[1] Doc. 1.  I will collectively refer to all defendants other than Harewood as the Commonwealth Defendants.
[2] *Id.*
[3] Doc. 21.
[4] Doc. 126.
[5] Doc. 128.

*tunc*.[6]  I granted the motion on May 22, 2019, allowing the Commonwealth Defendants to file a motion for summary judgment *nunc pro tunc* on or before June 5, 2019.[7]  Commonwealth Defendants then timely moved for summary judgment on June 3, 2019.[8]  The Commonwealth Defendants' motion raised two arguments: (1) that Mutschler failed to exhaust administrative remedies with respect to all claims against the Commonwealth Defendants and (2) that the Commonwealth Defendants were entitled to summary judgment as to Mutschler's claim arising from the number of diapers he was provided because they were relying on the professional judgment of Dr. Harewood and other medical professionals.[9]

On May 22, 2019, I adopted a Report and Recommendation from United States Magistrate Judge Martin C. Carlson and granted Defendant Harewood's motion for summary judgment.[10]  I subsequently granted the Commonwealth Defendants' motion for summary judgment on May 5, 2020, concluding that Mutschler failed to exhaust administrative remedies with respect to all claims against the Commonwealth Defendants.[11]  Mutschler appealed my Order granting summary judgment to the Commonwealth Defendants.[12]

---

[6]  Doc. 146.
[7]  Doc. 147.
[8]  Doc. 150.
[9]  Doc. 151.
[10] Doc. 148.
[11] Docs. 167-68.
[12] Doc. 170. Mutschler did not appeal the summary judgment ruling in favor of Defendant Harewood.

3

On appeal, the United States Court of Appeals for the Third Circuit affirmed my ruling in part, reversed it in part, and remanded the case to me for further proceedings.[13] The court agreed with my conclusion that Mutschler had not exhausted administrative remedies with respect to the six grievances identified in the Commonwealth Defendants' motion for summary judgment, but found that he had exhausted his administrative remedies with respect to a seventh grievance that was not mentioned in the Commonwealth Defendants' motion or supporting brief.[14] The seventh grievance, which was filed with prison officials on July 23, 2014, alleged in pertinent part that "(1) for the past eight days, Mutschler's bedding had been soaked with urine and his discarded, urine-soaked diapers had been accumulating in his cell, and (2) there were now 18 such diapers in his cell."[15] The grievance alleged that Defendants Tritt and Manbeck were aware of this issue.[16] The court accordingly reversed my Order to the extent that it granted summary judgment to Tritt and Manbeck as to Mutschler's Eighth Amendment claim arising from the allegedly unsanitary conditions in his cell.[17]

I reopened the case in accordance with the Third Circuit's mandate on December 15, 2021 and referred the remaining claim against Tritt and Manbeck to

---

[13] Doc. 175-1; *Mutschler v. Tritt*, No. 20-2022, 2021 WL 5445810, at *3 (3d Cir. Nov. 22, 2021).
[14] *Id.* at *2.
[15] *Id.*
[16] *Id.*
[17] *Id.* at *3.

mediation.[18]  On July 11, 2022, the mediator reported that mediation was unsuccessful.[19]

In the leadup to trial, I addressed cross motions *in limine* filed by the parties.[20]  I granted in part and denied in part Defendants' motion *in limine*, ruling that only evidence relevant to the deliberate indifference claim against Tritt and Manbeck would be admissible at trial, but denying Defendants' request to bar Mutschler from recovering compensatory damages.[21]  I denied Mutschler's motion *in limine* without prejudice, noting that the motion listed evidence and testimony that he planned to introduce at trial but did not make any arguments as to why any evidence should be admitted or excluded from trial.[22]  I additionally denied Mutschler's requests for the Court to grant him default judgment, reopen discovery, and continue trial based on purportedly deficient discovery responses by Defendants, noting that such requests should have been raised and adjudicated prior to the discovery deadline in 2018.[23]

I conducted the bench trial on May 15, 2023.  My findings of fact and conclusions of law from the trial follow in this Memorandum Opinion.

---

[18]  Doc. 176.
[19]  Doc. 180.
[20]  Doc. 204.
[21]  *Id.* at 2-3.
[22]  *Id.* at 3.
[23]  *See* Docs. 187, 215.

## II.     TESTIMONY AND EVIDENCE

The Court heard testimony during the bench trial from the three remaining parties: Mutschler, Tritt, and Manbeck.  Mutschler, appearing by videoconference in accordance with the parties' stipulation,[24] testified first.[25]  Mutschler testified that during the relevant period of time in July 2014, correctional officers regularly let used diapers pile up in his cell until they needed to be removed in large bags.[26] He also testified that on one occasion there were so many diapers in the cell that officers needed to use a shovel to remove them.[27]  Mutschler admitted that he did not see the shovel being used, but stated that he could hear three scrapes from the shovel while he was in a nearby shower and that when he returned to his cell the diapers had been removed.[28]  He also testified that his cell was cleaned immediately before it was to be inspected by the prison's Program Review Committee ("PRC").[29]  Mutschler testified that the sheets on his bed were only changed once a week despite his urinary incontinence creating a need for more frequent bedding changes.[30]

---

[24]  *See* Doc. 192 at 1-2.
[25]  *See* Unofficial Bench Trial Transcript at 10.  At the Court's request, the assigned Court Reporter provided an unofficial transcript of the bench trial in order to facilitate the Court's ruling on an expedited basis.  Because the transcript is unofficial, pagination in the Court's citation to the transcript may differ from the final official version of the transcript.
[26]  *Id.* at 11.
[27]  *Id.*
[28]  *Id.* at 17, 26-27.
[29]  *Id.* at 11, 25.
[30]  *Id.* at 12.

Mutschler testified that the large number of used diapers in his cell caused black mold to grow on the walls of the cell.[31] He testified that he cleaned the mold with the washcloth that he ordinarily used to clean his body because he did not have any other option.[32] He also stated that he often walked around the prison in urine-soaked clothes because he did not have any other option.[33]

Mutschler testified that he informed Tritt and Manbeck of the conditions in his cell during conversations with them.[34] According to Mutschler, Manbeck told him that he would remedy the situation and ensure that correctional officers removed diapers from Mutschler's cell, but subsequently took no such action. Mutschler testified that Tritt told him that she did not want to hear about the unsanitary conditions in the cell.[35] Mutschler further testified that Tritt had knowledge of the conditions of his cell both through conversations with him and by reviewing Mutschler's grievances.[36]

Mutschler testified that staff from the prison's medical department came to see him multiple times during the relevant period.[37] Because he was in the prison's restricted housing unit ("RHU"), such visits ordinarily occurred at the inmate's cell

---

[31] *Id.* at 13.
[32] *Id.* at 14.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 24.
[37] *Id.* at 30.

for non-emergency medical care.[38] Mutschler testified that one of the prison's doctors prescribed Mutschler a cream to treat his diaper rash.[39]

The Court next heard testimony from Defendant Tritt, who was called as on cross in Mutschler's case in chief.[40] Tritt testified that she was serving as Superintendent of SCI-Frackville during the period of time relevant to this case and that she was responsible for the overall operations of the institution and the staff in that role.[41] Tritt testified that she could not recall any instances in which she made unscheduled stops at Mutschler's cell to check for the presence of used diapers.[42] Tritt also could not recall whether she observed black mold growing on the walls of Mutschler's cell.[43] Mutschler asked Tritt why his cell was being inspected on a daily basis.[44] Tritt responded that officers in the RHU were responsible for conducting daily inspections of all cells in the RHU but that she was not responsible for such inspections and did not conduct the inspections.[45]

On cross examination by Defendants' counsel, Tritt stated that when reviewing prisoner grievances she would review the relevant documents and make phone calls to staff members who were involved in the grievance or could remedy

---

[38] *Id.*
[39] *Id.* at 29.
[40] *Id.* at 33.
[41] *Id.* at 33-34.
[42] *Id.* at 34.
[43] *Id.* at 36.
[44] *Id.* at 39.
[45] *Id.*

the inmate's complaint as necessary.[46]  Although Tritt sometimes conducted investigations on her own, she primarily relied on the reports of other staff members in reviewing grievances.[47]

Tritt testified that she walked every unit of the prison at least once a month but more commonly on a weekly basis and that she spoke with several inmates when she entered a unit.[48]  Any visits she conducted on the RHU during the relevant period were based on this regular schedule and were not based on a policy directed at Mutschler specifically.[49]  Tritt testified that she could not recall any instances in which she noticed an odor coming from Mutschler's cell, though she acknowledged that noticing particular smells in the RHU was difficult because other inmates on the unit sometimes smeared feces on their walls.[50]  She also testified that she never noticed a large number of diapers accumulated in Mutschler's cell.[51]

Manbeck was the final witness to testify at trial, again called as on cross in Mutschler's case in chief.[52]  Manbeck testified that he was serving as the RHU lieutenant at all relevant times.[53]  In that role, he was responsible for the care,

---

[46] *Id.* at 42-44.
[47] *Id.* at 44.
[48] *Id.* at 45-46.
[49] *Id.* at 46.
[50] *Id.* at 47.
[51] *Id.*
[52] *Id.* at 50.
[53] *Id.*

custody, and control of all inmates in the RHU and for supervising the officers in the unit.[54]

Manbeck recalled speaking with Mutschler about the conditions of his cell and the accumulation of diapers.[55] According to his testimony, he told Mutschler that he should give used diapers to nurses when they made twice-daily rounds in the unit to deliver medication to inmates.[56] Manbeck testified that Mutschler accepted that solution and agreed that it would resolve the issue.[57] Manbeck further testified that it was not the responsibility of him or his staff to remove diapers from the cell and that this responsibility rested with the prison's medical staff.[58] Manbeck testified that he did not recall an incident in which a shovel was used to remove diapers from the cell.[59]

Mutschler asked Manbeck about a written report from a staff member on July 26, 2014 that Mutschler had "poor hygiene."[60] Manbeck did not have personal knowledge as to why the staff member wrote that.[61] He also acknowledged that Mutschler's cell was being inspected every day, but stated that this was due to the prison's policy of routinely inspecting RHU cells every time

---

[54] *Id.*
[55] *Id.* at 51.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 52.
[59] *Id.*
[60] *Id.* at 54.
[61] *Id.* at 54-55.

rounds were performed and not due to a policy specific to Mutschler.[62]  Manbeck testified that he did not recall any occasion in which a large number of diapers accumulated in Mutschler's cell, testifying that the most he ever saw at one time was one or two diapers.[63]  He also could not recall any incident in which diapers were removed from Mutschler's cell in a large bag.[64]

On cross examination, Manbeck stated that he could not recall any incident during the relevant period when a subordinate officer reported anything out of the ordinary with regard to Mutschler's cell.[65]  Manbeck was aware of the medical condition causing Mutschler's urinary incontinence.[66]

Manbeck testified that he spoke with the medical department after hearing Mutschler's concerns regarding the removal of diapers.[67]  Manbeck did not recall what response he received from the medical department, but stated that referring the issue to medical was the most he could do given that provision and removal of diapers was the responsibility of the medical department.[68]

---

[62]  *Id.* at 55.
[63]  *Id.* at 55-56.
[64]  *Id.* at 56.
[65]  *Id.* at 64.
[66]  *Id.*
[67]  *Id.* at 67.
[68]  *Id.*

## III. STANDARD OF REVIEW

In conducting a bench trial, a district court must "find the facts specially and state its conclusions of law separately."[69] The findings and conclusions may be stated on the record at the close of trial or in a written opinion following the trial.[70] Findings of fact and conclusions of law must be stated with sufficient clarity to indicate the basis for the district court's decision.[71] Assessing the credibility of witnesses is one of the court's duties during a bench trial.[72] In doing so, the Court may credit one party's account of a disputed fact and discredit the opposing party's account.[73]

## IV. FINDINGS OF FACT

After hearing the testimony during the bench trial, I make the following findings of fact:

1. Mutschler was incarcerated in SCI-Frackville in July 2014.[74]

2. Mutschler was housed in the prison's restricted housing unit.[75]

3. Mutschler suffered from urinary incontinence at all relevant times.[76]

---

[69] Fed. R. Civ. P. 52(a)(1).
[70] *Id.*
[71] *Kruger v. Purcell*, 300 F.2d 830, 831 (3d Cir. 1962).
[72] *United States v. Or. State Med. Soc.*, 343 U.S. 326, 339 (1952).
[73] *See E. Exp., Inc. v. Mack Warehouse Corp.*, 326 F.2d 554, 555 (3d Cir. 1964); *Consol. Water Power & Paper Co. v. Spartan Aircraft Co.*, 185 F.2d 947, 951 (3d Cir. 1950).
[74] *See* Transcript at 21-22.
[75] *See id.* at 25.
[76] *Id.* at 11-12.

4. Mutschler used adult diapers because of his urinary incontinence.[77]

5. The adult diapers were prescribed by the prison's medical department.[78]

6. Prison staff changed Mutschler's bedsheets once a week in accordance with DOC policy.[79] They did not change the bedsheets more frequently as a result of Mutschler's urinary incontinence.[80]

7. Mutschler experienced rashes on his body resulting from the use of adult diapers.[81] A doctor employed in the prison's medical department prescribed him a cream to treat his rash.[82]

8. Defendant Tritt was employed as superintendent of SCI-Frackville at all relevant times.[83] In that role, she was responsible for overall operations of the prison and supervision of all staff members.[84]

9. Defendant Manbeck was employed as SCI-Frackville's RHU lieutenant at all relevant times.[85] In that role, he was responsible for

---

[77] *See id.* at 14.
[78] *Id.* at 41, 43,
[79] *Id.* at 12.
[80] *Id.*
[81] *Id.* at 29.
[82] *Id.*
[83] *Id.* at 33-34.
[84] *Id.*
[85] *Id.* at 50.

the care, custody, and control of all inmates in the RHU and for supervising the officers in the unit.[86]

10. Tritt and Manbeck were aware of Mutschler's urinary incontinence.[87]

11. Tritt and Manbeck regularly conducted rounds on the RHU, during which they visually inspected inmates' cells and spoke to inmates about the conditions of their confinement.[88]

12. Tritt and Manbeck's visual inspections of cells and conversations with inmates were based on policies that applied to all inmates within the RHU and were not specifically aimed at Mutschler.[89]

13. Officers in the RHU conducted daily visual inspections of all cells in the RHU.[90] No prison policy or directive specifically targeted Mutschler's cell for daily inspections.[91]

14. Mutschler spoke with Manbeck sometime in July 2014 about the conditions of his confinement.[92] Mutschler complained to Manbeck that diapers were accumulating in his cell and that prison staff were not timely removing the diapers.[93]

---

[86] *Id.*
[87] *See id.* at 40-41, 64.
[88] *Id.* at 40, 64-65.
[89] *Id.* at 46, 55.
[90] *Id.*
[91] *Id.*
[92] *Id.* at 14, 51.
[93] *Id.*

15. Manbeck told Mutschler that removal of diapers was the responsibility of the prison's medical staff and that Mutschler should give his used diapers to nurses when they made twice-daily rounds in the RHU to deliver medication to inmates.[94] Mutschler assented to this plan for the removal of diapers.[95]

16. Sometime after this conversation, Manbeck noted Mutschler's concerns to the prison's medical department.[96]

17. Tritt was aware of Mutschler's complaints of unremoved diapers through conversations with Mutschler and from reviewing Mutschler's grievances.[97]

18. Tritt reviewed and responded to Mutschler's grievances based on reports from her subordinate staff members with relevant knowledge and did not personally inspect Mutschler's cell.[98]

19. Based on my observation of the witnesses' testimony, demeanor, and mannerisms during the bench trial, I make the following credibility determinations:

---

[94] *Id.* at 51.
[95] *Id.*
[96] *Id.* at 67.
[97] *Id.* at 24.
[98] *Id.* at 42-44.

      a.      I find credible Manbeck's testimony that (1) he never observed more than one or two diapers accumulated in Mutschler's cell; (2) that he never observed officers removing large bags of diapers from Mutschler's cell; and (3) that he never observed officers removing diapers from the cell with a shovel.[99]

      b.      I find Mutschler's contrary testimony that officers removed large bags of diapers from the cell and that they used a shovel to remove diapers from the cell not credible.[100]

      c.      I find Mutschler's testimony that he cleaned black mold from the walls of his cell using his personal washcloth and that he regularly walked around in urine-soaked clothing not credible.[101]

      d.      I find credible Tritt's testimony that (1) she never observed mold on the walls of Mutschler's cell; (2) she never noticed a smell emanating from Mutschler's cell; and (3) she never noticed a large amount of used diapers accumulated in Mutschler's cell.[102]

---

[99] *See id.* 52, 55-56.
[100] *See id.* 11, 17, 26-27.
[101] *See id.* at 13-14.
[102] *See id.* at 36, 47.

e. I find Mutschler's testimony that Tritt told him she did not want to hear about the unsanitary conditions of his cell not credible.[103]

## V.   CONCLUSIONS OF LAW

Plaintiffs advancing Eighth Amendment conditions of confinement claims must allege (1) that they suffered a "sufficiently serious" deprivation; and (2) that the prison official defendants had a sufficiently culpable state of mind.[104] The first element is an objective standard requiring allegations that the plaintiff was denied "the minimal civilized measures of life's necessities."[105] It is not enough to allege that the plaintiff was uncomfortable.[106] Rather, the plaintiff must allege that the conditions of his confinement posed a "substantial risk of serious harm" to his health or safety.[107] The second element is subjective and requires allegations that defendants were deliberately indifferent to a substantial risk of serious harm to the plaintiff's health or safety.[108] This requires allegations that defendants were aware of the risk and disregarded it.[109]

---

[103] *See id.* at 14.
[104] *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)).
[105] *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).
[106] *Id.*
[107] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).
[108] *Id.* (citing *Farmer*, 511 U.S. at 834).
[109] *Id.* (citing *Beers-Capitol v. Wetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

With this standard in mind, I make the following conclusions of law:

1. Mutschler has not established that he was deprived the minimal civilized measures of life's necessities. In light of my finding that Mutschler's testimony was not credible that a large number of diapers were allowed to accumulate in his cell, I conclude that Mutschler did not endure any conditions of confinement that were sufficiently adverse to violate the Eighth Amendment.

2. Mutschler has not established that Tritt was deliberately indifferent to a substantial risk of serious harm to his health or safety. In light of my findings that Tritt never observed a large number of diapers in Mutschler's cell or any other evidence that the conditions of his confinement posed a substantial risk of serious harm, I conclude that Tritt's only personal involvement in the alleged violations of Mutschler's civil rights were her supervisory role as superintendent of the prison and her review and response to Mutschler's grievances, neither of which is sufficient to hold a defendant liable under 42 U.S.C. § 1983.[110]

---

[110] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that operation of *respondeat superior* is not sufficient to establish defendant's personal involvement in alleged civil rights violation); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (holding that review and denial of grievance is not sufficient to establish defendant's personal involvement in alleged civil rights violation).

3.  Mutschler has not established that Manbeck was deliberately indifferent to a substantial risk of serious harm to his health or safety. The record reflects that Manbeck diligently sought to remedy any adverse conditions of confinement Mutschler was experiencing. After hearing Mutschler's complaints of diapers not being picked up, Manbeck told him to give the used diapers to nurses when they made twice-daily rounds to deliver medication.[111] Mutschler assented to this course of action, and Manbeck followed up with the prison's medical department to ensure that his concerns were addressed by the medical department.[112]

## VI. CONCLUSION

For the foregoing reasons, I will grant judgment in favor of Defendants Tritt and Manbeck and close this case.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[111] Transcript at 51.
[112] *Id.*